UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PLAINVILLE GENERATING CO., LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DTE BIOMASS ENERGY, INC. ) <br> AND ) <br> PLAINVILLE GAS PRODUCERS, INC., ) <br> ) <br> Defendants. ) | C.A. No. 05-11210-GAO |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

After plaintiff Plainville Generating, Co., LLC ("Plaintiff") filed this action in June 2005, counsel for defendant Plainville Gas Producers Co. ("Plainville Gas") approached counsel for Plaintiff about dropping certain claims against Plainville Gas that were required by their Contract to be in arbitration and refiling them in an Amended Complaint in this action. These claims — for misrepresentation, breach of contract, breach of covenants of good faith and fair dealing, etc. — represented the bulk of Plaintiff's substantive claims against Plainville Gas. (The claim against Plainville Gas in the original Complaint in this action was for equitable relief, to maintain the status quo pending resolution of the arbitration; and against both parties for their interrelated 93A violations). Counsel for Plainville Gas urged that this consolidation of claims was only to be more efficient and "without prejudice" to Plaintiff's rights. Plaintiff accepted Plainville Gas' offer and filed an assented-to motion to amend the Complaint in September 2005 to add the claims that had been in arbitration. The arbitration was voluntarily terminated and all progress there forfeited.

Then, just as the Defendants' time to answer to the Amended Complaint came due, they moved to dismiss for lack of subject matter jurisdiction caused by the inclusion of Plainville Gas allegedly breaking diversity. The offer to consolidate claims, like this Motion to Dismiss, was but a ruse to delay this case further. It is entirely in keeping with Defendants' pattern of strong-arm tactics in their dealings with Plaintiff.

The Motion to Dismiss should be denied. As shown below, it is legally groundless, and is premature in any event.

## The Locus of Plainville Gas' Operations is in Michigan

Defendants concede that Plainville Gas' principal offices are located in Ann Arbor, Michigan. They argue, however, that prior to August 31, 2005 "the only location at which Plainville Gas owned any equipment and facilities and/or carried out any physical business activities" was in Massachusetts. That claim is misleading. Plainville Gas' physical presence in Massachusetts was never anything more than a limited property interest in the gas collection facilities, which consist of pipes leading from the gas wells, some blowers, and a flare. These pipes are underground and permanently embedded in the real property of the subject landfill ("Landfill"), which Defendant does not own. *See* attached Affidavit of Gerard Lorusso ("Lorusso Aff.") at ¶ 3. Plainville Gas' assertion in its Motion that it "owns" the collection system is also an exaggeration: the system was built by the Landfill owner (*see* Complaint, Tab A, 1996 Contract at II(F)), and though title was temporarily with Plainville Gas prior to August 31, 2005 (to permit it to utilize tax credits), under the Gas Rights Agreement title automatically re-vests with the Landfill owner upon termination of the Agreement. *See id.* at IX. In short, Plainville Gas had a temporary property interest in some pipes that are permanently part of the Landfill real property, some blowers, and a flare.

This slight property interest is Plainville Gas' *only* connection to Massachusetts. Defendants themselves admit that Plainville Gas never had any employees in Massachusetts (and indeed has no employees at all). Defendants maintained none of the documents, software, or other materials which are necessary to operate the collection system at the Landfill (which is the basis for Plaintiff's pending Motion for Preliminary Injunction). *See* attached Lorusso Aff. at ¶ 4, which reveals that a search with Landfill's owner's assent has not found the documents and software, despite the very vague affidavit of James A. Van Hoy suggesting that Plaintiff should search the Landfill. Plainville Gas' function "managing" the collection system was a completely passive enterprise carried out by Plainville Gas officers in Ann Arbor, Michigan, which consisted of contacting third-party consultants to adjust the wells or blowers occasionally, as needed — and they did not even do this sufficiently, which is the basis for the claims in this action.

The only "public face" of Plainville Gas was always its Ann Arbor, Michigan office where the only personnel involved with the corporation resided and operated. Those are the only parties Plaintiff ever dealt with. Lorusso Aff. at ¶ 2. Moreover, for both their official and only business locations, and for all contacts and legal notices, the agreements between all parties (including with the Landfill owner) identify solely Ann Arbor, Michigan. The 2002 Gas Purchase Agreement between Plainville Gas and Plaintiff's predecessor-in-interest gives Ann Arbor, Michigan as the sole business address and location for Plainville Gas, and specifies that all official notices are to be sent there. *See* 2002 Contract at pp. 2, 17 [Attachment B to the Complaint] The Gas Rights Agreement amendment between Plainville Gas and the Landfill owner also specifies Ann Arbor, Michigan as the sole business address and location for Plainville Gas, and specifies that all official notices under that agreement must be sent to Ann

Arbor. *See* 1996 Contract at pp. 1, 22; 2000 Amendment to Gas Purchase Agreement at ¶ 5 (incorporating conditions of 1996 Contract) [Attachment A to the Complaint].

Under these circumstances, the Court must find that the "locus" of Plainville Gas' operations is in Michigan, where the only Plainville Gas personnel reside, where the only official notices could go, and where the only management decisions are made; these decisions are the only "activity" that Plainville Gas engages in. *Diaz-Rodriquez v. Pep Boys Corp.*, 410 F.3d 56 (1st Cir. 2005), cited by Defendants, does not require a contrary result. There the court held that it would apply a "locus of operations test" to determine a corporation's principal place of business, by "searching for the location of the corporation's actual physical operations." 410 F.3d at 61 (citation omitted). The *Diaz-Rodriguez* court found that where Pep Boys' principal offices were in Pennsylvania, but it had all its 27 stores, all its inventory, and all its 1214 employees in Puerto Rico, then the locus was in Puerto Rico.

*Diaz-Rodriguez* simply has no bearing on this case, where Plainville Gas' "physical operations" consists solely of a temporary property interest in some underground pipeworks — which can't be separated from the Landfill owner's property and which revert automatically to the Landfill owner — blowers, and a flare. To the contrary, in *Diaz-Rodriguez*, 410 F. 3d 61 n. 4, the court quoted with approval *J.A. Olson Co. v. City of Winona*, 818 F. 2d 401, 411 (5th Cir. 1987), where the Fifth Circuit stated "when the activity of a corporation is passive and the 'brain' of a corporation is in another state, the situs of the corporation's 'brain' is given greater significance." If ever there were a passive activity, surely it is sitting in an office in Ann Arbor, paying third-party consultants to tune machinery built by a different third-party who holds the long-term reversionary interest in, and will ultimately regain ownership of, the machinery. *See also Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir.

1998) ("The district court determined that at the time this action was filed Nauru was a passive investor in land and its primary activities were management-oriented. This determination is supported by the record which indicates that Nauru's nerve center or 'brain' is in Nauru or Australia, not in Texas."); *Village Fair Shopping Ctr. Co. v. Sam Broadhead Trust*, 588 F.2d 431, 434 (5th Cir. 1979) ("The single passive investment in the Mississippi shopping center should not of itself outweigh all of the other factors we have mentioned in the determination of the company's principal place of business.").

Indeed, the holding of *Diaz-Rodriguez* that "the principal place of business should be the place where the corporation conducts the most activity that is visible and impacts the public, so that it is least likely to suffer from prejudice against outsiders," 410 F. 3d at 61, virtually precludes granting Defendants' motion. As noted, Plainville Gas conducted *no* visible, public activities in Massachusetts; in fact, it conducted no activities here at all.

### **Defendants' Motion is Premature**

It would be improvident for the Court to grant Defendants' motion on the slight affidavit of Curtis Ranger. Plainville Gas' presence in Massachusetts is a contested issue of fact. To the extent the Court is inclined to consider the argument at all, and does not find it fails as a matter of law on the papers, *see supra*, then Plaintiff is entitled to discovery on the issue, and an evidentiary hearing. That was exactly the approach taken in *Diaz-Rodriguez*. *See* 410 F. 3d at 59 (noting that the District Court had held an evidentiary hearing and made "extensive findings of fact."); *see also Pinnacle Consultants, Ltd. v. Leucadia Nat'l. Corp.*, 923 F. Supp. 439 (S.D.N.Y. 1995) (ordering discovery on issue of existence of diversity and permitting defendant to renew motion to dismiss upon completion of discovery).

It is especially important that Plaintiff be granted a full hearing here, where the alleged presence of Plainville Gas in Massachusetts is precisely what Plaintiff is denying in the underlying suit. Plaintiff is entitled to have the merits of those claims determined by a jury. Plaintiff's rights should not be truncated by a premature resolution of Defendants' Motion to Dismiss.

**WHEREFORE**, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied; or, in the alternative, that the Court order discovery and an evidentiary hearing on the issue.

Dated: October 24, 2005

PLAINVILLE GENERATING CO., LLC

By its Attorneys,

*/s/ Christopher DeMayo*
Steven Ferrey, Consulting Counsel (BBO No. 163600)
Christopher L. DeMayo (BBO No. 653481)
LEBOEUF, LAMB, GREENE & MACRAE, L.L.P.
260 Franklin Street
Boston, Massachusetts 02110
(617) 748-6800

## **CERTIFICATE OF SERVICE**

      I, Christopher L. DeMayo, hereby certify that this 24th day of October, 2005, I caused a true copy of the foregoing Motion for Preliminary Injunction to be served on counsel of record for Plainville Gas Producers, Inc. and DTE Biomass Energy, Inc. at the following addresses:

      Wesley S. Chused, Esq.
      Looney & Grossman, LLP
      101 Arch Street
      Boston, MA 02110
      (617) 951-2800
      **(via hand delivery)**

      W.C. Blanton, Esq.
      Blackwell, Sanders, Peper & Martin, LLP
      4801 Main Street
      Suite 1000
      Kansas City, MO 64112
      816-983-8000
      **(via U.S. mail)**

_____
Christopher L. DeMayo

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PLAINVILLE GENERATING CO., LLC,        )
                                       )
    Plaintiff,                         )
                                       )
vs.                                    )    C.A. No. 05-11210-GAO
                                       )
DTE BIOMASS ENERGY, INC.               )
AND                                    )
PLAINVILLE GAS PRODUCERS, INC.,        )
                                       )
    Defendants.                        )

### AFFIDAVIT OF GERARD LORUSSO

Now comes Gerard Lorusso and states as follows:

1. My name is Gerard Lorusso, and I am Treasurer and an owner of Plaintiff Plainville Generating Co., LLC ("PGC" or the "Company"), a renewable electric energy generation company, which is part of a family-owned business in Plainville, Massachusetts. I have worked adjacent to and in view of the Landfill and its Collection System in Plainville, Massachusetts, for this family-owned business for as long and longer as Defendants have been involved in the contracts at issue in the above-captioned litigation. The Collection System is comprised primarily of plastic pipes and fan blowers which, when maintained properly, are designed to collect the Landfill gas naturally produced by organic decay in the Landfill and blow it through these pipes to Plaintiff PGC's renewable energy Facility, where it is the Facility's sole permitted operating fuel.

2. At every occasion that my company or I had any contact with PGP it was exclusively through PGP, Mr. Ranger and his associates in Ann Arbor, Michigan. At no time was there any

BS 105442.4 46922 00001 10/21/2005 12:55pm

regular or ongoing presence of PGP personnel at the Landfill. When PGP suddenly abandoned its obligations in August 2005 after Plaintiff filed suit, the documents, software, and information necessary to properly operate the Collection System that Plaintiff is now seeking were not produced by PGP, nor found at the Landfill in Massachusetts.

3. Most of the Collection System is plastic pipe buried underground in the Landfill and is thus embedded in the real property. While the Gas Rights Agreement (which Defendant since its announced termination has not even supplied Plaintiff with the current copy with any recent amendments or side agreements) supposedly transfers the actual Collection System assets to Defendant PGP from the Landfill owner, it does so only temporarily and in return for PGP making annual "license and rental fee" payments to the owner in the amount of $210,000. Gas Rights Agreement, Article IV(c), Attachment A to Complaint. When PGP suddenly abandoned its contracts at the Landfill in August 2005, it dumped these temporarily held Collection System assets in our laps. In my experience in business, an owned asset would not normally be abandoned like this. However, under the Gas Rights Agreement, ownership of all assets embedded underground in the owner's property eventually re-vests long-term in the Landfill owner. At the termination of the Gas Rights Agreement, the ownership of the Collection System assets automatically re-vest in the Landfill owner at no cost and with no additional payment or new consideration. See Gas Rights Agreement, Article IX. It may be that the Gas Rights Agreement only temporarily transfers these underground pipe and related assets to PGP for purposes of taking certain federal tax credits. PGP did not have any of its own employees on-site to regularly manage or operate these assets, to the best of my knowledge and belief. At no time in the last eight years has Defendant, PGP, exercised any control or decision-making regarding the Landfill Collection System from any regular presence in the Commonwealth.

2

4. Mr. Van Hoy in his affidavit dated October 20, 2005, states that Plaintiff should have found some of these requested and necessary documents "that were left at the Landfill [or] items that are available from Allied . . ." [the Landfill owner]. We ask that these documents be identified. None of the documents requested in writing from Defendant were ever provided directly to Plaintiff nor did Defendants ever direct Plaintiff to these documents, software and data. Plaintiff with the assent of the Landfill owner has searched the Landfill office in that area where these documents, requested by Plaintiff, necessary to operate the Landfill would have been left by Defendant and has found substantially no documents, data and software located there. It is my understanding that Landfill owner Allied also has been requesting necessary documents from Defendant since PGP abruptly abandoned its long-term contractual obligations a few weeks ago.

The foregoing is true and correct to the extent of my knowledge and belief.

_____
Gerard Lorusso

On this 24th day of October, 2005, before me, the undersigned notary public, personally appeared Gerard Lorusso, proved to me through satisfactory evidence of identification, which were __personal knowledge__, to be the person whose name is signed on the preceding or attached document, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

_____
Notary Public                    (Seal)

My commission expires: August 3, 2012

105442.4



KAREN A. DUMONT
Notary Public
Commonwealth of Massachusetts
My Commission Expires
August 3, 2012